IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L.P. GROUP 2, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 13-7484 |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, | : | |
| PERRITTI DIVIRGILIO, JAMES | : | |
| FERRARO, and JOHN DOES (1-10), | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                                    June 19, 2015

      The plaintiff, a minority-owned contractor, brings this action seeking injunctive and compensatory relief against the defendants pursuant to 42 U.S.C. § 1983, for constitutional violations allegedly suffered when the defendants, through the Philadelphia Labor Standards Unit, a city agency, cited it for failure to pay prevailing wages on two construction contracts (the "NTI contracts" and the "Stucco contract") and then withheld money owed to the plaintiff under the contracts to compensate the underpaid workers. The plaintiff also brings state-law causes of action for breach of contract in which it demands compensatory relief for the withheld funds under the two contracts. The plaintiff previously appealed the agency's determinations regarding both contracts to the Pennsylvania state courts. The defendants argue that these appeals are pending within the meaning of *Younger v. Harris*, 401 U.S. 37 (1971); therefore, the court should abstain from reaching the merits of the case because (1) adjudication of the federal case would interfere with the state-court proceedings, and (2) the state-court proceedings provide an adequate opportunity to adjudicate the constitutional claims that the plaintiff raises in federal

court.[1]  The court finds that *Younger* principles are applicable and abstention is appropriate as to the equitable constitutional claims and the breach of contract claim for the NTI contracts, and will dismiss those claims.  As to the claims for punitive damages and attorney's fees for the constitutional violations, given the nature of the relief sought and the limited remedies available from the state court, the court will stay the monetary damages claims under *Younger*.  Finally, the court will dismiss the claim for breach of contract of the Stucco contract because it is claim precluded.

## I.  ALLEGATIONS AND PROCEDURAL HISTORY

On December 20, 2013, the plaintiff, L.P. Group 2, Inc. ("LP Group"), commenced this action by filing a complaint against the defendants, the City of Philadelphia ("the City"), Perritti DiVirgilio ("DiVirgilio") and James Ferraro ("Ferraro"), director and deputy director, respectively, of the Philadelphia Labor Standards Unit ("PLSU"), and John Does (1-10). Compl., Doc. No. 1.  In the complaint, LP Group alleges that it bid for, and was awarded, certain contracts under the City's Neighborhood Transformation Initiative ("NTI") program.  Compl. at ¶ 2.  LP Group claims that under section 17-107 of the Philadelphia City Code ("the Code"), it was exempt from paying its employees the prevailing wage rate for work under these contracts.[2] *Id.*

On September 28, 1999, the City Council passed Philadelphia Ordinance No. 990221-A, which amended the Code by adding section 17-107(2)(b)(.2) ("the training exemption"), which allows prevailing wage exemptions for training programs not certified by the United States

---

[1] The defendants also argue, in the alternative, that the plaintiff has failed to state a claim upon which relief can be granted and that the plaintiff's claims are time-barred, contentions that the court need not now address given the below disposition.
[2] The prevailing wage is generally the wage paid to union members, and "has been historically imposed by the City as the minimum wage to be paid to workers who perform 'City Work,' as defined under Section 17-107(1)(b) of the Code."  Compl. at ¶ 16.  "Under Section 17-107(1)(b) of the Code, 'City-Work' is defined, in part, as 'non-professional service contracts with the City for compensation that exceeds $200,000.00.'"  *Id.* at ¶ 17.  These non-professional service contracts include contracts for the provision of demolition services under subsection (1)(h).  *Id.*

Department of Labor or the Pennsylvania Department of Labor and Industry.  *Id.* at ¶ 26.  The training exemption provided that

> [a] bona fide member of a job training program may be paid less than the prevailing wage if said training program's primary purpose is to provide construction training opportunities and [provided] that the said training program has been approved by the City, a City Agency, or City-related Agency, and provided that the size of the construction project does not exceed 8 housing units.

*Id.*  This amendment included a footnote which provided that the training exemption would become effective only when the Minority Business Enterprise Council ("MBEC") certified to the Mayor and City Council that the Union met certain conditions.  *Id.* at ¶ 27.  However, the MBEC never provided the necessary certifications to the Mayor and the Council and, as such, the training exemption never went into effect.  *Id.* at ¶ 30.  LP Group alleges that "the City published this amendment without the footnote, thereby leading [LP Group] and the PLSU to believe the amendment was effective[, and that] [t]he City published this amendment without the footnote from approximately 1999 to September 2007."  *Id.* at ¶ 31.  Furthermore, although the same ordinance enacted two other sections of the Code that also required MBEC certification to become effective, the defendants arbitrarily, capriciously, and intentionally chose to recognize those two sections, but not the training exemption.  *Id.* at ¶ 32.

In reliance on the training exemption, which the City published without the footnote, LP Group hired trainees from the non-profit Connection Training Services ("CTS"), which provides building and construction-related job training and community re-entry programs for ex-offenders released from prisons.  *Id.* at ¶¶ 38, 44.  Because the City approved CTS's Stucco/Plasterer Training Program as "a bona fide training program," LP Group hired trainees from the CTS program and bid on contracts offered by the City, believing "that it would not be required to pay these trainees the prevailing wage in light of the exemption under the Code."  *Id.* at ¶¶ 43-44.

Further,

> [t]he PLSU, through DiVirgilio and Ferraro, refused to acknowledge the prevailing wage exemption for training programs pursuant to Section 17-107(2)(b)(.2), despite the fact that (a) they did not know this amendment was not effective due to the failure of MBEC to file the necessary certifications and (b) they enforced other provisions of the amendment (Sections 17-107(1)(p) and 17-107(10)) which were similarly ineffective without MBEC certification and which were enacted through the same ordinance as the prevailing wage exemption.

*Id.* at ¶ 51. The PLSU, through DiVirgilio and Ferraro, also "refused to recognize bona fide membership in an approved job training program as a basis to exempt [LP Group] from paying the prevailing wage to job trainees." *Id.* at ¶ 52. The result was that employers who hired employees from registered union apprenticeship programs did not have to pay the prevailing wage, but the PLSU compelled employers who hired non-union training program trainees, such as LP Group, "to pay prevailing wages under the threat of financial sanction and debarment from the ability to bid on future City-Work contracts." *Id.* at ¶ 66. LP Group asserts that this selective enforcement and refusal to recognize the training exemption violated its equal protection, substantive due process, and procedural due process rights. *Id.* at ¶ 65.

The PLSU cited LP Group for not paying its employees the prevailing wage and withheld $620,105.41 that was owed to it for services performed. *Id.* at ¶ 2. When LP Group attempted to contest the citations, the defendants denied its fundamental due process rights causing irreparable damages. *Id.*

LP Group filed a timely appeal of the citation under the Stucco contract to the Board of Labor Standards ("the Board"), which is an appellate panel empowered under section 17-107(7) of the Code to review decisions made by the PLSU. *Id.* at ¶ 82. The Board dismissed the appeal, and LP Group appealed the Board's decision to the Court of Common Pleas. *Id.* at ¶ 83. "On December 23, 2011, the Hon[orable] Paul J. Panepinto, sitting in the Court of Common

Pleas, dismissed the appeal as moot based on the City's assertion that [LP Group's] invoices had been paid in full."[3] *Id.* at ¶ 90.

With respect to the NTI contracts, "[LP Group] appeared before the Board . . . on August 14, 2013 for a hearing to appeal the citation issued by the PLSU with regard to the following NTI demolition contracts: Chester Avenue, Lindenwood, Peach & Ruby, Salford & Beaumont and Saybrook." *Id.* at ¶ 141. On November 7, 2013, the Board denied LP Group's appeal, confirmed the September 8, 2005 NTI demolition citation issued by the PLSU, and found that LP Group's conduct was intentional.[4] *Id.* at ¶ 148.

Based on the aforementioned allegations, LP Group asserts causes of action under section 1983 for violations of its equal protection, substantive due process, and procedural due process rights, and for breach of contract to recover the funds that were improperly withheld under the Stucco and NTI contracts.

Chief Judge Tucker reassigned this case from Judge Shapiro to Judge Dalzell on January 9, 2014. Doc. No. 3. The defendants filed a motion to dismiss on February 11, 2014. Doc. No. 6. LP Group's counsel filed a motion to withdraw as counsel on February 17, 2014. After briefing and a status conference, Judge Dalzell granted the motion to withdraw. Doc. Nos. 11, 12, 14, 15. On April 10, 2014, Lionel Sharpless, Esquire, entered a notice of appearance on behalf of LP Group. Doc. No. 20. Chief Judge Tucker reassigned this case from Judge Dalzell to the undersigned on April 21, 2014. LP Group filed a response in opposition to the motion to dismiss on April 28, 2014. Doc. No. 24.

---

[3] The defendants point out in their motion to dismiss that LP Group appealed this decision to the Commonwealth Court on October 28, 2011, and that the court dismissed the case in June 2012, when LP Group failed to comply with a court order instructing it to file its brief. Defs.' Br. at Ex. 7, Appeal of LP Group 2, Inc. from a Decision by the Bd. of Labor Standards, Docket Number 2070 CD 2011 ("Stucco Contract Docket").
[4] Though not an allegation listed in the complaint, LP Group indicates in the Certification of No Other Actions portion of its complaint that "that the matter entitled *LP Group 2, Inc. v. The Philadelphia Labor Standards Unit* (No. 03085 November Term, 2013) is currently pending in the Philadelphia Court of Common Pleas." *Id.* at 52.

The court had an initial pretrial conference with counsel on June 11, 2014. Doc. No. 26. After the pretrial conference, the court denied without prejudice the motion to dismiss and stayed the proceedings in this matter pending the outcome of the related state court action. Doc. No. 27. The court held a telephone status conference on August 11, 2014, and an interim pretrial conference on January 20, 2015. Doc. Nos. 29, 30, 31. After the interim pretrial conference, the court granted the defendants leave to re-file their motion to dismiss. Doc. No. 33. The defendants filed the instant motion to dismiss on March 3, 2015. Doc. No. 34. LP Group filed a response in opposition on April 2, 2015. Doc. No. 36. The court heard oral argument on the motion on April 14, 2015. Doc. No. 37. The motion is ripe for disposition.

## II.    DISCUSSION

In the motion to dismiss, the defendants argue that the court should (1) abstain and dismiss the entire action pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); (2) dismiss the claims against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); (3) dismiss the claims against them because LP Group has not properly stated a claim for conspiracy or violation of procedural due process, substantive due process, or equal protection; (4) dismiss the claims related to the Stucco contract because they are barred by the doctrine of *res judicata*; and (5) dismiss the breach of contract claims under counts III and IV of the complaint because they are barred by the applicable statute of limitations. Br. in Support of City Defs.' Mot. to Dismiss Due to Abstention and Pursuant to Fed. Civ. P. 12(b)(6) ("Defs.' Br."), Doc. No. 34.

In response to the defendants' arguments, LP Group contends that (1) *Younger* abstention is inappropriate; (2) it has pled "enough facts to show that the City is liable for the acts of its employee under *Monell*;" (3) it has adequately pled a claim for conspiracy and violation of its

rights to procedural due process, substantive due process, and equal protection; (4) "[t]he res judicata force of the state judicial review of local administrative adjudications depends on a variety of factors which have not been developed in the record in this case;" (5) the statute of limitations does not bar the causes of action in counts III and IV because the right of action only accrues when the administrative action is final. Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss Compl. Pursuant to Fed. Civ. P. (12)(b)(6) ("Pl.'s Opp.") at 17-38, Doc. No. 36.

As indicated above, the defendants first argue that the court should dismiss the entire case pursuant to *Younger* abstention.[5] In *Younger*, the Supreme Court announced the principle that federal courts are required to abstain from enjoining parallel pending state criminal proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). The doctrine also applies where the federal plaintiff seeks to have the federal court adjudicate claims that could be brought before, and adjudicated by, the state court. *See Monaghan v. Deakins*, 798 F.2d 632, 636 (3d Cir. 1986), *aff'd in part, vacated in part on other grounds*, 484 U.S. 193 (1988) (citations omitted). However, the doctrine is narrow; if a federal court has jurisdiction over a case, its "'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Accordingly, the Court has extended *Younger* to only two other types of "exceptional" circumstances: civil enforcement proceedings, and "civil

---

[5] As indicated above, LP Group also names John Does (1-10) as defendants, and alleges that they "are individuals whose identities are presently unknown to [LP Group] who engaged in conduct under color of state law that deprived [LP Group] of rights, privileges and immunities secured by the United States Constitution, thereby causing [LP Group] to sustain damages." Compl. at ¶ 12. The court recognizes that "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Scheetz v. The Morning Call, Inc.*, 130 F.R.D. 34, 36-37 (E.D. Pa. 1990) (collecting cases). The court may raise *Younger* abstention *sua sponte*, and in doing so here, determines that the analysis for the fictionally-named defendants is the same. *See O'Neill v. City of Philadelphia*, 32 F.3d 785, 786 n.1 (3d Cir. 1994).

proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint*, 134 S. Ct. at 588 (internal quotation marks and citation omitted).

In suits seeking injunctive or declaratory relief, the solution is usually dismissal, however circuit courts have held that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for . . . injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate."  *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (citation omitted); *see also Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) ("However, when damages are at issue rather than discretionary relief, deference—rather than dismissal—is the proper restraint.").

Accordingly, the court will first evaluate whether *Younger* principles are applicable to this type of proceeding.  Next, given the types of claims LP Group brings, the requested relief, and the availability of the relief at the state court, the court will decide whether a stay or dismissal is more appropriate.  Finally, if the court determines that *Younger* is applicable to any of the constitutional claims, the court will determine whether a recognized exception to *Younger* applies.

### A.    Whether *Younger* Principles are Applicable

The court must first determine whether this case is one of the three "exceptional" circumstances to which *Younger* applies: (1) state criminal proceedings, (2) civil enforcement proceedings, and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint*, 134 S. Ct. at 588.  As the state proceeding in this case clearly does not fit into either the first or third categories, and

neither party argues otherwise, the court's analysis will focus on whether this is the particular type of civil enforcement proceeding to which *Younger* applies. In *Sprint*, the Supreme Court clarified that *Younger* abstention is applicable only if the state civil enforcement proceeding is "quasi-criminal" in nature. *Id.* at 593. The Court explained that there are three factors commonly found amongst quasi-criminal proceedings: the action is commenced by the state, the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and there was a preliminary investigation that culminated with the filing of formal charges. *Id.* at 592.

The defendants argue that the state-court proceeding meets all three of the above factors. First, the defendants point out that the City initiated the state proceedings to enforce violations of Philadelphia's prevailing wage laws. Defs.' Br. at 8. Second, the PLSU cited and penalized LP Group for violating the prevailing wage laws. *Id.* Third, pursuant to the same statute that governs the prevailing wage rules, if there is a complaint of a violation under that section,

> the Director shall investigate such complaints and in connection therewith or with respect to any investigation shall have full power and authority to subpoena any witness, books, records, or other data of any person for the purposes of obtaining information pertinent to such investigation. The Director shall make a finding in writing with respect to each complaint filed, and shall send a copy thereof to the complainant and the contractor and shall maintain it on file. Upon request, the unit shall provide any affected contractor or subcontractor with a hearing, pursuant to subsection 8(e).

*Id.*, Phila. Code § 17-107(6)(b). The defendants also note that LP Group availed itself of the appeals process, which is ongoing. *Id.* LP Group has not provided any argument that the state proceedings are not quasi-criminal. The court agrees with the defendants and finds that the state proceedings are quasi-criminal under *Sprint*.

After determining that the state proceedings are quasi-criminal, the court must then consider the three factors announced in *Middlesex County Ethics Committee v. Garden State Bar Association* to determine whether the state proceeding (1) is ongoing and judicial in nature, (2)

implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges. 457 U.S. 423, 432 (1982); *see also Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 181 (3d Cir. 2014) (explaining that under *Sprint*, *Younger* applies only when the case is both quasi-criminal and meets the *Middlesex* factors). Applying these factors to the allegations in the complaint, the court finds that each factor is satisfied and, therefore, *Younger* principles apply.

As to the first factor, the defendants rely on *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) to argue that the state proceedings are clearly judicial. In that case, the Third Circuit held that the district court should have abstained from hearing a constitutional challenge to the City of Philadelphia's parking ticket procedures. *Id.* at 786-87. The defendant argues that "[v]irtually all of the judicial indicia mentioned in *O'Neill* were present in [LP Group's] administrative proceedings." Defs.' Br. at 15. The defendants point out that

> [p]ursuant to the Pennsylvania Local Agency Law, 2 Pa.C.S.A. § 105, defendants in hearings before the PLSU and BLS are entitled to reasonable notice and a hearing. *Id.* at § 553. At those hearings they have the rights to be represented by attorneys and to conduct direct and cross examinations of witnesses. *Id.* at §§ 552, 554. Defendants also have the right to a full and complete record including stenographic recording of all testimony. *Id.* at § 553. Although the official rules of evidence do not apply, "all relevant evidence of reasonably probative value may be received." *Id.* at § 554. The Philadelphia code further authorizes the BLS to administer oaths and subpoena witnesses, documents, and any other records. Phila. Code § 17-107(6)(b)(.7). And the BLS is authorized to reverse, affirm, or modify the decisions of the PLSU. *Id.* at § 17-107(6)(b)(.4). Finally, all defendants before the PLSU and BLS have the right to judicial review in the Pennsylvania state court system. 2 Pa.C.S.A. § 752.

Defs.' Br. at 15-16.

The court agrees and finds that these proceedings are judicial in nature. Consistent with Third Circuit and Supreme Court precedent, the fact that the Board's decision was appealable, and indeed was appealed, to the Court of Common Pleas for judicial review—"an undeniably

judicial forum"—the court will consider these to be a unitary process that is judicial in nature. *Gonzalez*, 755 F.3d at 183 (citing *Middlesex*, 457 U.S. at 436; *Sprint*, 134 S. Ct. at 592; *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 n.9 (3d Cir. 2014)).

With regard to whether the state proceedings are "ongoing," the defendants also argue that both proceedings, the one pertaining to the Stucco contract and the one pertaining to the NTI contracts, are considered ongoing until LP Group exhausts its state appellate remedies. With respect to the appeal of the NTI contracts decision, the matter is clearly still pending because LP Group's state-court judicial review proceeding is still pending in the Court of Common Pleas. *See* Defs.' Br. at Ex. 2, Civil Docket Report, *LP Group 2, Inc. v. Philadelphia Labor Standards Unit*, Case ID 131103085 ("NTI Contract Docket").[6] With respect to the appeal of the Stucco contract decision, the matter is still pending within the meaning of *Younger* because LP Group has not properly exhausted its state court judicial remedies. Within the Third Circuit, "state proceedings remain 'pending,' within the meaning of *Younger* abstention . . . where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790-91 (3d Cir. 1994). LP Group appealed the Board's decision to the Court of Common Pleas of Philadelphia County. Compl. at ¶ 84. The Court of Common Pleas dismissed the appeal as moot. *Id.* at ¶ 90. LP Group then appealed to the Commonwealth Court of Pennsylvania, and the court dismissed that appeal with prejudice for failure to prosecute. Stucco Contract Docket at 5 (indicating a dismissal for failure to comply with order directing LP Group to "enter an appearance through counsel and file a brief within 45 days").[7] The fact that LP

---

[6] At oral argument on the motion to dismiss, the parties indicated that, as of that date, they were still awaiting a decision from the Court of Common Pleas.

[7] In its response to the motion to dismiss, LP Group argues that it is improper for the court to take judicial notice of the docket sheets from the appeal of the Board's disposition of the Stucco contract to the Court of Common Pleas,

Group abandoned its claim while on appeal in the Pennsylvania Commonwealth Court prevents it from seeking federal court review of the matter under *Younger*. Therefore, the court agrees that both state court proceedings are ongoing for the purposes of the *Younger* analysis.

The second prong of the *Middlesex* test is whether the state proceeding implicates an important state interest. This inquiry is focused on whether the generic proceedings are important to the state, rather than on the importance of the outcome of the particular case. *O'Neill*, 32 F.3d at 791-92. The court is again guided by *O'Neill*. In that case, the Third Circuit held, with respect to the City of Philadelphia's parking ticket procedures, that the City "has a vital and critical interest in the functioning of a regulatory system, such as the one at issue [t]here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular." *Id.* at 792. The court finds that, in the instant case, the City's interest is equally as pressing as those cited in *O'Neill*; the City has a strong interest in establishing and enforcing prevailing wage regulations for the construction contracts that it awards to contractors.

The final prong of the *Middlesex* test asks whether the state proceedings provide an adequate opportunity to adjudicate the constitutional issues raised in federal court. "Absent some showing of a procedural defect, the presumption is that '[s]tate courts are every bit as competent to deal with the [plaintiff's] claims ... as are the federal courts and this, of course,

---

and in turn the appeal to the Commonwealth Court, which the defendants attached to their motion to dismiss. *See* NTI Contract Docket; Stucco Contract Docket. LP Group cites, and misquotes, several cases which are inapposite to support this contention. Pl.'s Opp. at 37-38. Contrary to LP Group's contention, this court may take judicial notice of the existence of these dockets and any accompanying opinions to determine whether the cases are still pending and, as discussed *infra*, to determine their claim preclusive effect. "To credit [the plaintiff's] argument and disallow a court from recognizing the existence of other judicial opinions would thwart a defendant's right to raise issue preclusion in a motion to dismiss, and it would obviate the entire purpose of the doctrine." *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."). Because LP Group does not dispute the authenticity of the dockets, the court will take judicial notice of them.

includes the ability to address claims under both the State constitution and the Federal constitution.'" *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 629 (E.D. Pa.) (citing *Lui v. Comm'n on Adult Entm't Establishments*, 369 F.3d 319, 326 (3d Cir. 2004), *aff'd,* 572 F. App'x 68 (3d Cir. 2014)). Moreover, "it is sufficient under *Middlesex*, that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) (citing *Middlesex*, 457 U.S. at 436). The question is whether, in the state-court judicial review of the administrative decision, "state law *clearly bars* the interposition of the constitutional claims." *Gonzalez*, 755 F.3d at 184 (citing *Moore v. Sims*, 442 U.S. 415, 425-26 (1979)). Specifically, the court must examine "whether state law raises procedural barriers to the presentation of the federal challenges." *Id.*

Pennsylvania law provides that, "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa. C.S. § 752. On appeal, a plaintiff may raise constitutional challenges: a plaintiff has a right to have a court determine whether the agency's "adjudication is in violation of the constitutional rights of the appellant," *id.* at § 754, and a plaintiff can challenge "the validity of the statute, home rule charter or local ordinance or resolution in the appeal," *id.* at § 753. *See also Gentlemen's Retreat, Inc. v. City of Philadelphia*, 109 F. Supp. 2d 374, 380 (E.D. Pa. 2000), *aff'd*, 276 F.3d 577 (3d Cir. 2001) (citations omitted) ("Under Pennsylvania law, a plaintiff may raise constitutional claims during the judicial review of an administrative decision."). Neither party has identified any procedural barriers to LP Group raising its equitable federal constitutional claims in state court. Therefore, the court is entitled to

assume that if LP Group had raised those claims in state court, it would have been afforded an adequate remedy. *See O'Neill*, 32 F.3d at 793.

## B. <u>The Nature of the Relief Sought</u>

The next issue is whether the nature of the relief sought requires the court to dismiss or stay the individual claims. Here, LP Group's federal section 1983 claims seek declaratory relief, a monetary award of the funds withheld under the Stucco and NTI contracts, punitive damages, attorney's fees and costs. LP Group's federal action also contains two breach of contract claims against the defendants. At the outset, the court notes that, although LP Group does not specify which defendants it is bringing the breach of contract claims against, the court will assume these causes of action are against the City only, since LP Group sued the other defendants in their individual capacity and LP Group has not alleged that they are parties to the contracts.[8] The court will address each claim in turn, beginning with the breach of contract claims.

### 1. Count III – Breach of Contract (Stucco)

LP Group alleges that it entered into a contract with City in or about 2003 to perform stucco services in exchange for payment, that it fully, properly, and timely performed all agreed services and complied with the contract terms, and the City breached the Stucco contract by withholding payments to LP Group of balances purportedly due and owing of $278,400.51. Compl. at ¶¶ 196-202. The City argues that this cause of action is claim precluded because LP Group abandoned its appeal in the Commonwealth Court.[9] Defs.' Br. at 35-38. As noted above, the docket sheet for this appeal reflects that the Commonwealth Court dismissed the case for

---

[8] Because it is extremely unlikely that the named defendants are also parties to these construction contracts, and LP Group has not alleged that they are, they cannot be sued for breaching those contracts. *See Commonwealth, State Pub. Sch. Bldg. Auth. v. Noble C. Quandel Co.*, 585 A.2d 1136, 1140 (Pa. Commw. 1991) (citation omitted) ("As a general rule, an action on a contract cannot be maintained against a person who is not a party to the contract unless the plaintiff is a third party beneficiary of the contract or the suit is for product liability or breach of warranty."). If the individually-named defendants are parties to the contracts, LP Group may amend its complaint to so state.

[9] The defendants also argue that the claim is time-barred, an argument which the court not need to reach given its disposition of the claim under the preclusion argument.

failure to comply with the court's order directing LP Group to "enter an appearance through counsel and file a brief within 45 days." Stucco Contract Docket at 5.

"[F]ederal courts [must] give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738 (1976)). "Decisions of state administrative agencies that have been reviewed by state courts are also given preclusive effect in federal courts." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 479-85 (1982)). Under Pennsylvania law, claim preclusion applies when the two cases share the following four conditions: "(1) the thing sued upon or for (that is, the issues); (2) the cause of action; (3) the persons and parties to the action; and (4) the quality or capacity of the parties suing or being sued." *M & M Stone Co. v. Hornberger*, No. CIV.A. 07-CV-4784, 2009 WL 3245460, at *8 (E.D. Pa. Sept. 30, 2009) (citations omitted).

The first element is satisfied where the same occurrence or event underlies both actions. *See Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). Here, the City's citation and withholding funds gave rise to both the federal and state actions. In both actions, LP Group seeks recovery of those funds allegedly wrongly withheld. Therefore, the first condition is satisfied.

Second, whether the causes of action are the same can be ascertained by looking at whether the cases are "based on the same allegedly wrongful acts," and whether resolution of the federal claim "would require the parties to 'rehash' the facts and legal arguments raised before" the state court. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 550 (3d Cir. 2006). This inquiry focuses on "the essential similarity of the underlying events giving rise to

the various legal claims" rather than "the specific legal theory invoked." *Id.* at 549 (citation omitted). In its federal action, LP Group alleges that the City breached the Stucco contract when it withheld $278,400.51 in payment for services rendered pursuant to that contract. Compl. at ¶¶ 196-202. The City withheld the funds as a result of a citation issued by the PLSU, and LP Group appealed that decision to the Board, and then up to the Court of Common Pleas, all the while arguing that it was deprived of money owed under the contract. *Id.* at ¶¶ 78-79, 82-84. The Court of Common Pleas "dismissed the appeal as moot based on the City's assertion that [LP Group's] invoices had been paid in full." *Id.* at ¶ 90. The two causes of action are based on the same allegedly wrongful act of withholding funds.

Third, the persons and parties are the same. LP Group is the appellant in the state action, and the City is the appellee in the state action. Finally, capacity of the parties to sue and be sued is the same as it was in the state action. Accordingly, the conditions for claim preclusion are satisfied, and the court will grant the motion to dismiss the Stucco breach of contract claim.

### b.      Count IV – Breach of Contract (NTI)

LP Group alleges that it entered into contracts with the City between 2004 and 2006 to perform demolition services in exchange for payment, that it fully, properly, and timely performed all agreed services and complied with the contract terms, and that the City breached the NTI contracts by withholding payments of balances purportedly due and owing of $341,704.90. Compl. at ¶¶ 204-210. The court finds that, because the City withheld amounts allegedly due under the contracts because of LP Group's failure to pay the prevailing wage, the relief sought in the NTI breach of contract claim is the same relief sought in the case pending with the Court of Common Pleas. Consequently, the award of contract damages, if granted by this court, would interfere with the state court's ability to resolve the pending labor standard

dispute. *See Rauso v. Fein*, No. 13-CV-693, 2015 WL 2217411, at *7 (E.D. Pa. May 12, 2015) (holding that abstention is appropriate where state law claims are raised or "directly implicated in the state . . . action such that a decision in this case could interfere in that one"). Given that LP Group has already asserted that it is entitled to these monies in its state-court proceeding, the court's resolution of the agency's determination will settle the issue of whether LP Group is entitled to those funds. *See id.* Accordingly, under *Younger*, the court must, and will, dismiss the NTI breach of contract claim.

**3.      Counts I, II and V (Section 1983 claims against the City, DiVirgilio, Ferraro and John Does 1-10)**

In its section 1983 claims against the defendants, LP Group asks the court to enter judgment:

> a. Declaring that the Defendants are estopped from denying that the Training Exemption set forth in Section 7-107(2)(b)(.2) was not properly adopted or was ineffective as it pertains to [LP Group's] Stucco Contract and NTI Demolition Contracts.
>
> b. Declaring that any employees of [LP Group] who were bona fide members of a job training program during their time of employment with LPG may be paid less than the prevailing wage on City-Work contracts awarded to [LP Group].
>
> c. Declaring that any employees of [LP Group] may be paid less than the prevailing wage on contracts with the City awarded to [LP Group] that did not constitute City-Work, i.e. contracts that were in an amount of less than $200,000.
>
> d. Awarding all monies withheld from [LP Group] in an amount of no less than $620,105.41 (consists of $278,400.51 owed to [LP Group] for work performed under the Stucco Contract and $341,704.90 for work performed under the NTI Contracts).
>
> e. Awarding to [LP Group] punitive damages, interest, attorney's fees and costs and such other and further relief as is just and equitable under the circumstances.

Compl. at 43-44, 46-47, 50-51. Subparagraph (d) merely repeats LP Group's request for an award of the amounts allegedly due under the Stucco and NTI contracts, which the court has

already addressed above. Therefore, the court will dismiss subparagraph (d) of counts I, II, and V. Subparagraphs (a), (b), and (c) are claims for declaratory relief that, as discussed above, are either cognizable in the pending state-court proceeding, as to the NTI contracts, or claim precluded, as to the Stucco contracts. Accordingly, the court will dismiss subparagraphs (a), (b), and (c) of counts I, II, and V.

Subparagraph (e), however, must be stayed. A district court must stay claims for relief that are not cognizable in the ongoing state proceeding. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) (stating that a "District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding"). Because it does not appear that the state court has the power to award punitive damages, interest, attorney's fees, or costs, the court should stay these claims until the exhaustion of the pending state-court proceeding.[10] Accordingly, the court will stay LP Group's claims for monetary damages in subparagraph (e) of the ad damnum clauses in counts I, II, and V.

## C. *Younger* Exceptions

After finding that, pursuant to *Younger*, the court should dismiss LP Group's equitable constitutional claims and the NTI breach of contract claims, and stay LP Group's constitutional monetary damages claims, the court next must address LP Group's arguments that an exception to the *Younger* doctrine applies.[11] Abstention under *Younger* is inappropriate if LP Group establishes that (1) irreparable injury is "both great and immediate," (2) the state law is "flagrantly and patently violative of express constitutional prohibitions," (3) there is a showing

---

[10] Under Pennsylvania law, judicial review of local agency action is limited as follows: "If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals)." 2 Pa. C.S. § 754. In turn, section 706 provides, "An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa. C.S. § 706.

[11] Because the court finds that the Stucco contract action is claim precluded, a *Younger* exception would not apply.

of "bad faith [or] harassment," or (4) there are "other unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (citing *Younger*, 401 U.S. at 46, 53-54). For there to be an unusual circumstances exception to the *Younger* doctrine, "such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Schall v. Joyce*, 885 F.2d 101, 125 (3d Cir. 1989). The state court or agency must be "incapable of fairly and fully adjudicating the federal issues before it" for this exception to apply. *Id.* at 124.

In response to the defendants' arguments that none of the recognized *Younger* exceptions apply, LP Group first contends that it is not required to show that it would suffer irreparable harm to avoid abstention. This is true; irreparable harm is but one of the possible exceptions that LP Group may seek to establish. LP Group does not argue that it would suffer irreparable harm if the court abstains, and the court can discern no facts from the complaint to suggest that LP Group would be irreparably harmed if this court dismisses the case. Additionally, LP Group concedes that it is not seeking to "challenge the constitutionality of the regulations." Pl.'s Opp. at 20. This leaves the court tasked with analyzing LP Group's arguments that the proceedings were initiated in bad faith, and that the agencies were "incompetent" such that they were incapable of fairly adjudicating the federal issues before it.

With respect to the claim of bad faith, "the bad faith exception only applies where the federal plaintiffs allege that the state courts themselves, not merely the state court plaintiffs, are acting in bad faith." *Kessler Inst. for Rehab., Inc. v. Mayor & Council of Borough of Essex Fells*, 876 F. Supp. 641, 659 (D.N.J. 1995) (comparing *Judice v. Vail*, 430 U.S. 327, 338 (1977) with *Dombrowski v. Pfister*, 380 U.S. 479 (1965)); *see also W.K., Jr. by W.K. v. New Jersey Div.*

*of Developmental Disabilities*, 974 F. Supp. 791, 796 (D.N.J. 1997) (citing *Moore v. Sims*, 442 U.S. 415, 432 (1979) and explaining that the "bad faith prosecution exception is not available where the pending claims could be presented in state proceedings and there is no allegation of impermissible bias on the part of the state judiciary").  LP Group has not alleged that that the Court of Common Pleas is acting in bad faith, but rather that the PLSU and the Board were biased.  The court need not step in while an unbiased court is currently reviewing the agency's determination.

LP Group also argues that the City initiated the proceedings before the administrative agencies without the hope of obtaining a valid conviction, and that this supports a finding of bad faith under *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).  Pl.'s Opp. at 21.  *Perez* held that "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown . . . federal injunctive relief against pending state prosecutions [is] appropriate."  401 U.S. at 85.  LP Group argues that it is has pled the following facts sufficient to state a claim of bad faith: (1) "[T]he Director, [who] was vested with the final authority over the policy of the PLSU and enforcement of the Code, improperly shared and/or delegated these [non-delegable] responsibilities to Ferraro;" (2) "Ferraro has, at all times, conspired and acted in concert with DiVirgilio in such wrongful delegations and violations of law;" (3) Ferraro and DiVirgilio are biased in favor of unions, which creates a conflict of interest rendering them incapable of fair decision-making; (4) "At the October 27, 2005 proceeding, counsel for [LP Group] requested that the PLSU determine whether prevailing wages were required to be paid on NTI contracts which were not City-Work . . . .  Ferraro refused to make this ruling and in fact the

PLSU has never" issued a written ruling to date; and (5) "Ferraro acted as prosecutor, judge, jury and executioner in this proceeding." Pl's Opp. at 18 (citing Compl. at ¶¶ 48-50, 64, 120, 125).

Without deciding whether the PLSU brought the proceedings in bad faith, the court finds that LP Group has failed to show that the procedures afforded in the state courts are inadequate to challenge the enforcement proceeding. *See State of N.J. v. Chesimard*, 555 F.2d 63, 69 (3d Cir. 1977) ("And even in those instances where the initial predicate for federal intervention has been made out, a federal court must still stay its hand unless the party seeking relief can demonstrate that without a federal equitable remedy he will suffer harm that is both great and immediate and has no adequate remedy at law."); *Moore*, 442 U.S. at 430 ("In sum, the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims."); *accord Carr v. Axelrod*, 798 F. Supp. 168, 175 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 302 (2d Cir. 1993). There are no procedural barriers to LP Group bringing its federal constitutional claims in state court.

The last attack is on the state court's competency to fairly and fully adjudicate LP Group's constitutional claims. LP Group cites *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973), and argues that if either the state administrative tribunal or the state court is not "competent" because of bias, then abstention is inappropriate, and that because it has alleged that the agency was biased, this is sufficient to render *Younger* inapplicable. Pl.'s Opp. at 18. *Gibson* is procedurally distinguishable, however, because the trial court in that case was faced with a lawsuit brought in federal court while the administrative proceeding was still pending, and where the state was asking the court to defer to the agency's ruling. *See Gibson*, 411 U.S. at 569 (suit was brought in the United States District Court after the agency noticed hearings); *see also Bettencourt v. Bd. of Registration in Med. of Com. of Mass.*, 904 F.2d 772, 780 (1st Cir. 1990)

(discussing *Gibson*). The *Gibson* Court noted that it need not defer to an unconstitutionally biased agency even if "judicial review, *de novo* or otherwise, would be *forthcoming* at the *conclusion* of the administrative proceedings." *Gibson*, 411 U.S. at 577 (emphasis added). Here, the court "is not being asked to defer to *future* or contemporaneous unconstitutional conduct. Plaintiff's case is for the alleged *past* denial of due process and equal protection, a claim which the [Pennsylvania Court of Common Pleas], having jurisdiction, is equally competent to entertain." *Bettencourt*, 904 F.2d at 780 (alteration to original).

In sum, the court finds that LP Group has not established that a recognized exception to the *Younger* doctrine applies.

### III.    CONCLUSION

Examining the record before the court, which is limited to the allegations in the complaint and the exhibits attached thereto, the defendants' motion to dismiss, supporting brief, and the exhibits attached thereto, and LP Group's response in opposition thereto, the court finds that *Younger* principles apply because this case involves an ongoing quasi-criminal state-court proceeding that (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges, and because LP Group has not adequately pled an exception to the *Younger* doctrine. Accordingly, the court will grant the defendants' motion to dismiss LP Group's equitable constitutional claims and its NTI breach of contract claims, because the remedies that it seeks for these injuries are available to it in the pending state-court proceedings. However, because LP Group's constitutional claims also seeks punitive damages and attorney's fees, which are unavailable in state court, the court will stay the constitutional claims (insofar as they contain requests for monetary relief unavailable in state court), pending the completion of the state-court review. Finally, the court finds that the breach

of contract claim relating to the Stucco contract is claim precluded; therefore, the court will also dismiss this count.

An appropriate order follows.

BY THE COURT:


/s/ *Edward G. Smith, J.*
EDWARD G. SMITH, J.